IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ADRIA E. ROBERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 12-00716-CG-N |
| | ) |
| BANCORPSOUTH BANK, INC., and | ) |
| PHILLIP WEBB, | ) |
| | ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION

This action is before the court on two matters: (1) a motion for judgment on the

pleadings (doc. 6) filed by the defendants, BancorpSouth Bank, Inc. ("BankcorpSouth")

and Phillip Webb ("Webb"); and (2) a motion to remand (doc. 8) filed by the plaintiff,

Adria E. Roberson ("Roberson").  These matters have been referred to the undersigned

Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B).  Inasmuch as the plaintiff's motion to remand challenges the jurisdiction of

this Court, it is necessary to address this motion prior to any consideration of the

defendants' motion for judgment on the pleadings.  *See* Doc. 10.  Upon consideration of

the motion to remand (doc. 8), defendants' response in opposition thereto (doc. 19),

plaintiff's reply (doc. 22), and all other pertinent portions of the record,[1] it is the

recommendation of the undersigned that plaintiff's motion be **GRANTED**.

---

[1] Consideration has also been given to defendants' motion for judgment on the pleadings (doc. 6),
plaintiff's objections to that motion (doc. 9), and defendants' reply (doc. 20).

I.    <u>Background</u>.

Plaintiff filed this action in the Circuit Court of Baldwin County, Alabama, on October 23, 2012, against defendants, BancorpSouth Bank, Inc. ("BankcorpSouth") and Phillip Webb ("Webb"), alleging state law causes of action arising from the alleged sexual harassment and termination of the plaintiff by Webb, her supervisor, which was condoned or approved by BankcorpSouth, her employer.  *See* Doc. 1-1 at 2-9.  On November 19, 2012, BankcorpSouth removed the action to this Court on the grounds that, "[w]hile complete diversity of citizenship is not present, Webb is improperly joined in the State Court Action for the sole purpose of defeating diversity."  (Doc. 1 at 3).  BankcorpSouth, therefore, concedes that Webb is a non-diverse resident defendant but argues, in sum, that he is fraudulently joined because "there is [no] realistic possibility that an Alabama state court could find that Plaintiff states a legitimate claim of outrage against Philip Webb under Alabama law."  (Doc. 19 at 4).

The factual basis for plaintiff's outrage and wantonness claim against Webb has been set forth in her complaint as follows:

> • Despite the above provisions and Mrs. Roberson's expectation that she would work in an environment free from intimidation, hostility, or sexual offensiveness, she was ultimately subjected to repeated harassment by her immediate supervisor, Philip Webb, which included, but was not limited to, denigrating sexual harassment.

(Doc. 1-1 at ¶ 9.).

> • The sexual harassment and repulsive behavior of Mrs. Roberson's immediate supervisor, Webb, included, at a minimum, emails discussing the degree to which office or other office personnel were physically attractive or "hot"; verbal commentary regarding the use of Viagra and its affects; actual disbursement of Viagra, a controlled substance, while making sexually suggestive

2

or inappropriately vulgar comments; emailing office jokes, including punch lines like "learning to live with the pricks in your life" and " I be yankin' off alone"; and an onslaught of nude or partially nude photographs which inappropriately highlighted human anatomy, including captions of a prurient and lewd nature.

(Doc. 1-1 at ¶ 10).

• Mrs. Roberson alleges that, as a result of Bancorp's negligence and wantonness, she was harassed and subjected to a hostile work environment, which caused her great mental and physical injury, which conduct required Mrs. Roberson to seek medical treatment and prescribed medications.

(Doc. 1-1 at ¶ 18).

• Mrs. Roberson alleges that, as a result of her reporting the above described sexual harassment violations through the appropriate Bancorp chain of command, including to one David Wright, she was subsequently singled out and systematically targeted by her immediate supervisor, which resulted in her having to endure hostile workplace treatment and novel protocols which were a stark departure from her previous years of employment and those endured by fellow employees, and embarrassed and humiliated her in front of co-workers.

(Doc. 1-1 at ¶ 19).

• Mrs. Roberson alleges that Bancorp participated in, or allowed through its negligence and wantonness, the retaliatory termination of her employment for reporting unlawful instances of harassment and hostile work environment.

(Doc. 1-1 at ¶ 20).

• Mrs. Roberson alleges that Bancorp and Webb, in response to her reporting of harassment and workplace violations, intentionally and with full disregard for the effect, and with the intention to inflict severe emotional distress upon her person for reporting unlawful instances of harassment and a hostile work environment, and systematically targeted her person in the hope that she would voluntarily resign her position, and that Bancorp knew or should have known that the resulting severe emotional distress was the result of their extreme and outrageous conduct. Said conduct was so extreme and outrageous so as not to be tolerated in a civilized

3

society.

(Doc. 1-1 at ¶ 23).

> • Mrs. Roberson alleges that, as a result of hostile targeting and other said extreme and outrageous conduct, she suffered severe emotional distress and resulting physical injury to her person, which includes, but is not limited to, being rushed to the emergency room, and thereafter requiring regular medical care and treatment proximately related to said outrage.

(Doc. 1-1 at ¶ 24).

> • Mrs. Roberson alleges that the extreme and outrageous behaviors of Bancorp, including the tarnishment of her reputation and the resulting loss of income have caused her continuing emotional distress and the incurring of proximately related medical care. All said conduct was extreme and outrageous and should not be tolerated in a civilized society.

(Doc. 1-1 at ¶ 25).  BancorpSouth acknowledges that these statements constitute the factual basis for plaintiff's outrage and wantonness claim against Webb and BancorpSouth but that, even taken as true, the conduct does not rise to the requisite level of egregious sexual harassment that can constitute the tort of outrage under Alabama law. (Doc. 19 at 5-6, *citing* Doc. 19-1 at 3-7).  Plaintiff argues that she is alleging just the sort of conduct involving egregious sexual harassment that can constitute the tort of outrage and that she has thus stated a viable claim against Webb, the alleged harasser and a non-diverse defendant.  (Doc. 8 at 3; Doc. 22 at 5).

II.     <u>Applicable Legal Standards</u>.

A.     <u>Remand Standard</u>.

It is well established that federal courts "have limited subject matter jurisdiction, or in other words, they have the power to decide only certain types of cases." <u>Morrison v. Allstate Indem. Co.</u>, 228 F.3d 1255, 1260-61 (11th Cir. 2000), *citing* <u>University of</u>

South Alabama v. American Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999). Subject matter jurisdiction cannot be created by the parties' consent but, instead, must be conferred and defined by statute.   Morrison, 228 F.3d at 1261, *citing* Fitzgerald v. Seaboard Sys. R.R., Inc., 760 F.2d 1249, 1251 (11th Cir. 1985)(*per curiam*).

In the removal context, it is equally clear that jurisdiction will vest in this Court only if the action has been properly removed and "only if the action is one over which the federal court possesses subject-matter jurisdiction". *See e.g.*  The Mobile Washington (MOWA) Band Of The Choctaw Indian Tribe v. Sunbelt Resources, Inc., 649 F.Supp.2d 1325, 1328 (S.D. Ala. 2009)("Removal statutes are construed narrowly, and jurisdictional uncertainties are resolved in favor of remand."), *citing* 28 U.S.C. § 1441(a); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim.").

Defendants must produce "facts supporting the existence of federal subject matter jurisdiction by a preponderance of the evidence." Hobbs v. Blue Cross Blue Shield of Ala., 276 F.3d 1236, 1242 (11th Cir. 2001)(citations omitted). *See also* McNutt v. General Motors Acceptance Corp. of Indiana, Inc., 298 U.S. 178 (1936); Lowery v. Alabama Power Co., 483 F.3d 1184, 1210 (11th Cir. 2007), *cert. denied sub nom* Hanna Steel Corp. v. Lowery, --- U.S. ----, 128 S.Ct. 2877 (2008); Tyson v. Miller, 2012 WL 1994855, *2 (S.D. Ala., May 08, 2012); Wiltew v. Parker, 2009 WL 3615041, * 2 (S.D. Ala. Oct. 30, 2009). *See also*, Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008) ("A removing defendant bears the burden of proving proper federal jurisdiction [and] doubts about the propriety of federal jurisdiction should be resolved in favor of

remand to state court.") (citation omitted); Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists") (citation omitted). Jurisdictional facts supporting removal are judged at the time of the removal.  Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 949 (11th Cir. 2000)(citing Allen v. R & H Oil Co., 63 F.3d 1326, 1335 (5th Cir. 1995)).

In addition, "[b]ecause removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand." Holloway v. Morrow, 2008 WL 401305, * 2 (S.D. Ala. Feb. 11, 2008), citing University of South Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction). *See also* Russell Corp. v. American Home Assur, Co., 264 F.3d 1040, 1050 (11th Cir. 2001)("Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand.").  "Thus, under § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff-be it the initial complaint or a later received paper-and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." Lowery, 483 F.3d at 1213.

    B.    Fraudulent Joinder.

Defendants' opposition to remand in this case is predicated solely on "the doctrine of fraudulent joinder."  (Doc. 19 at 3-4).  "Fraudulent joinder occurs when a plaintiff

attempts to prevent removal by joining a defendant who shares the same state citizenship as the plaintiff by filing a frivolous or otherwise illegitimate claim against a non-diverse defendant."  *Id.*, *citing* Fitts v. Griffin, 304 F.Supp.2d 1337 (M.D. Ala. 2004); Tedder v. F.M.C. Corp., 590 F.2d 115, 117 (5th Cir. 1979), and Thomas v. Jim Walter Homes, Inc., 918 F.Supp. 1498 (M.D.Ala. 1996).  When making a determination on whether complete diversity exists, courts may indeed disregard the citizenship of fraudulently joined defendants.  Fitts, 304 F.Supp.2d at 1337.  In Henderson v. Washington National Insurance Co., 454 F.3d 1278 (11th Cir. 2006), the Eleventh Circuit set forth the following standard of review with regard to fraudulent joinder claims:

> An action in state court may be removed to federal court when the federal courts have diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a). When a defendant removes a case to federal court on diversity grounds, a court must remand the matter back to state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed. *See* Lincoln Prop. Co. v. Roche, [546 U.S. 81] (2005) (*citing* 28 U.S.C. § 1441(b)). Such a remand is the necessary corollary of a federal district court's diversity jurisdiction, which requires complete diversity of citizenship.
>
> When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court. The plaintiff is said to have effectuated a "fraudulent joinder," *see* Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997), and a federal court may appropriately assert its removal diversity jurisdiction over the case. A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate either that: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id*. The defendant must make such a showing by clear and convincing evidence. *See* Parks v. New York Times Co., 308 F .2d 474, 478 (5th Cir. 1962).

454 F.3d at 1281.

The burden of proving fraudulent joinder by clear and convincing evidence is a

heavy one that requires the court to evaluate the parties' factual allegations and submissions in the light most favorable to the plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff. Crowe, 113 F.3d at 1538. Also, the court must make "these determinations based on the plaintiff's pleadings at the time of removal" but may "consider affidavits and deposition transcripts submitted by the parties." *Id.*; Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

The analysis used to resolve a claim of fraudulent joinder is similar to that applied to a motion for summary judgment under Fed.R .Civ.P. 56(b). Crowe, 113 F.3d at 1538. However, "[w]hile 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R.Civ.P. 56(b),' ... the jurisdictional inquiry 'must not subsume substantive determination.' " Id. Therefore, "[w]hen determining whether a resident defendant has been fraudulently joined, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law'." Clay v. Brown & Williamson Tobacco Corp., 77 F.Supp.2d 1220, 1223 (M.D.Ala.1999)(*quoting* Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1380–81 (11th Cir. 1998)); *see* Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a ***possibility*** of stating a valid cause of action in order for the joinder to be legitimate.")(emphasis in original).

Thus, in order to defeat plaintiff's motion for remand, defendants must show by clear and convincing evidence that, viewing the evidence in the light most favorable to the plaintiff and resolving all uncertainties of state law in plaintiff's favor, there is no possibility that the state circuit court could find that the complaint states a claim for

outrage and wantonness against Webb, plaintiff's supervisor and the alleged sexual harasser. However, if there is even a possibility that a state court would find that the complaint states a cause of action against Webb, the court must find that joinder is not fraudulent.

III.   Analysis.

Defendants have acknowledged that plaintiff is asserting a claim against Webb, her supervisor at the relevant time, for outrage based upon conduct of alleged sexual harassment.  (Doc. 19 at 4-6)  They argue, however, that plaintiff has failed to "provide a 'generalized statement of facts which will support a claim for relief'."  (Id. at 4, citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009),[2] and quoting in part McKelvin v. Smith, 85 So.3d 386, 389 (Ala.Civ.App. 2010), which actually held:

> "[T]he dismissal of a complaint is not proper if the pleading contains 'even a generalized statement of facts which will support a claim for relief under [Rule] 8, [Ala. R. Civ. P.]' (Dunson v. Friedlander Realty, 369 So.2d 792, 796 (Ala.1979)), because '[t]he purpose of the Alabama Rules of Civil Procedure is to effect justice upon the merits of the claim and to renounce the technicality of procedure.' Crawford v. Crawford, 349 So.2d 65, 66 (Ala.Civ.App.1977)."

85 So.3d at 389, quoting Simpson v. Jones, 460 So.2d 1282, 1285 (Ala.1984).  According

---

[2] In Ashcroft, the Supreme Court discussed the principles set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in relation to the sufficiency of the pleadings as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. []The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

556 U.S. at 678 (internal citations omitted).

to the defendants, plaintiff has not alleged conduct of sufficient severity to state a claim for outrage.  Under Alabama law, a plaintiff may recover on her outrage claim if she demonstrates that "the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it."  Green Tree Acceptance Inc. v. Standridge, 565 So.2d 38, 44 (Ala. 1990), citing American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1981).  Defendants here do not deny that the factual allegations in the Complaint constitute allegations of sexual harassment; they argue only that plaintiff's allegations are not sufficiently egregious enough to constitute outrageous conduct.

Although plaintiff has not alleged any physical contact by Webb and has not described the specific nature of the "emotional distress and resulting physical injury to her person, which includes, but is not limited to, being rushed to the emergency room, and thereafter requiring regular medical care and treatment" (doc. 19-1 at 7),  the undersigned cannot say with confidence that there is no possibility that plaintiff could establish a claim of outrage.   The undersigned cannot determine with certainty that defendant Webb's alleged conduct does not arguably fall within the admittedly limited scope of that tort.  See Inmon, 394 So.2d at 365 (elements: reckless or intentional conduct which was extreme or outrageous, and caused severe emotional distress so severe as to be unendurable); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1102 (Ala. 1984)("It is conceivable, under the facts alleged, that Rice can prove a set of facts in support of her claim of intentional infliction of emotional distress [and] [t]herefore, the trial court erred in dismissing that claim."); Thomas v. BSE Indus. Contractors, Inc., 624 So.2d 1041, 1044 (Ala.1993)(Categorized the cases in which the Alabama Supreme Court "has found

a jury question on an outrage claim" to include "a case involving egregious sexual harassment, <u>Busby v. Truswal Systems Corp</u>., 551 So.2d 322 (Ala.1989).").  Moreover, the fact that the Alabama Supreme Court has only found facts which constitute outrage in limited situations is not equivalent to a *per se* bar to such a claim in other circumstances. *See* <u>Tillman v. R.J. Reynolds Tobacco</u>, 253 F.3d 1302, 13056 (11th Cir. 2001)("If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.  The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate.") (citations and quotations omitted).  The courts of Alabama, including its Supreme Court, continue to address outrage claims arising in other situations by reference to the elements of the claim rather than a hard and fast rule that it only exists in circumstances previously found.  *See e.g.,* <u>Harrelson v. R.J.</u>, 882 So.2d 317, 322-23 (Ala. 2003)(finding that sexual assault of a minor constituted outrage); <u>Hurst v. Cook</u>, 981 So.2d 1143, 1157 (Ala.Civ.App. 2007)(rejecting, after analysis, outrage claim for intentional filing of false police report).  Defendants bear the burden of persuasion and the record in this case is insufficient to allow the Court to find that plaintiff's claim of outrage against Webb was merely an artifice to avoid removal to this Court.  Consequently, Webb was not fraudulently joined and the removal of this action was improper.  This Court lacks jurisdiction over this case and it must be remanded to the state court.

<u>CONCLUSION</u>

For the reasons stated above, it is recommended that plaintiff's motion to remand

(doc. 8) be GRANTED and that this action be remanded to the Circuit Court of Baldwin County, Alabama.  The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

      **DONE** this <u>14th</u> day of May, 2013.

                               <u>/s/ Katherine P. Nelson</u>
                               **KATHERINE P. NELSON**
                               **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.      **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within [fourteen] days[3]  after being served with a copy of the recommendation, unless a different time is established by order."  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party=s arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Opposing party's response to the objection**.  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  FED. R. CIV. P. 72; SD ALA LR 72.4(b).

3.      **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

     **DONE** this   14th   day of May, 2013.

               /s/ Katherine P. Nelson
               **UNITED STATES MAGISTRATE JUDGE**

---

[3] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).