IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ADRIA E. ROBERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 12-716-CG-N |
| | ) |
| BANCORPSOUTH BANK, INC. | ) |
| and PHILLIP WEBB, | ) |
| | ) |
| Defendants | ) |

## ORDER

This matter is before the court on the Report and Recommendation of the Magistrate Judge (Doc.26), and defendants' objection. (Doc. 27). Upon a <u>de novo</u> review of those portions of the report and recommendation to which objection is made, the court declines to adopt the Report and Recommendation and finds that the motion to remand (Doc. 8) should be denied.

**I. Background**

This action was removed to this court from the Circuit Court of Baldwin County, Alabama on November 19, 2012 by defendants. (Doc. 1). In the notice of removal, defendant BancorpSouth Bank Inc. ("Bancorp") asserted that while there was not complete diversity among the parties, diversity of citizenship existed because defendant Phillip Webb was fraudulently joined. (Doc. 1). In the complaint, plaintiff, Adria E. Roberson, asserts two counts. (Doc. 1-1). Count One asserts a

claim against Bancorp for negligent hiring, training, supervision and retention. (Doc. 1-1, pp. 5-7). Count Two asserts a claim against Bancorp and Webb for outrage and wantonness. (Doc. 1-1, pp. 7-8). Specifically, the complaint alleges that Webb, her immediate supervisor subjected her to "repeated harassment," "which included, but was not limited to denigrating sexual harassment." (Doc. 1-1, p. 4, ¶ 9). The complaint further alleges the following with regard to Webb:

> 10. The sexual harassment and repulsive behavior of Mrs. Roberson's immediate supervisor, Webb, included, at a minimum, emails discussing the degree to which office or other personnel were physically attractive or "hot"; verbal commentary regarding the use of Viagra and its affects; actual disbursement of Viagra, a controlled substance, while making sexually suggestive or inappropriately vulgar comments; emailing office jokes, including punch lines like "learning to live with the pricks in your life" and " I be yankin' off alone"; and an onslaught of nude or partially nude photographs which inappropriately highlighted human anatomy, including captions of a prurient and lewd nature.
>
> * * * *
>
>   23. Mrs. Roberson alleges that Bancorp and Webb, in response to her reporting of harassment and workplace violations, intentionally and with full disregard for the effect, and with the intention to inflict severe emotional distress upon her person for reporting unlawful instances of harassment and a hostile work environment, and systematically targeted her person in the hope that she would voluntarily resign her position, and that Bancorp knew or should have known that the resulting severe emotional distress was the result of their extreme and outrageous conduct. Said conduct was so extreme and outrageous so as not to be tolerated in a civilized society.
>
>   24. Mrs. Roberson alleges that as a result of hostile targeting and other said extreme and outrageous conduct, she suffered severe emotional distress and resulting physical injury to her person, which includes, but is not limited to, being rushed to the emergency room, and thereafter requiring regular medical care and treatment proximately related to said outrage.
> (Doc. 1-1, pp. 4-5, 7-8).

Defendants submitted the affidavit of Mr. Webb which described the emails and other conversations of which plaintiff complains in her complaint and attaches copies of non-work related email conversations between plaintiff and Webb.  Mr. Webb avers that he and plaintiff "forwarded each other arguably off-color jokes and/or pictures" and that none of the emails he sent her were "of a sexually harassing nature." (Doc. 19-3,¶¶ C, D).  Webb admits that he discussed Viagra with plaintiff and her husband on one occasion. (Doc. 19-3, ¶ E).  Webb reports that his wife was also present during the Viagra conversation. (Id.)  Plaintiff and her husband mentioned they were going out of town to celebrate their wedding anniversary and Webb says he gave plaintiff's husband a Viagra pill for their trip. (Id.) Any comments he made about Viagra were made in front of both Webb's wife and plaintiff's husband. (Id.)

In the first email conversation, Webb stated: "All the women there are not hot.  JUST KIDDING. JUST KIDDING." (Doc. 19-4, pp. 1-2).  To which plaintiff responded: "That is one thing I will not repeat especially to my ladies over here" and Webb replied: "How much do I owe you." (Doc. 19-4, p. 1).

The second email conversation consists of a joke/story about two porcupines attempting to get close to each other for warmth and learning to live with the injuries from quills. (Doc. 19-5).  The email stated that the real moral of the story is "LEARN TO LIVE WITH THE PRICKS IN YOUR LIFE." (Doc. 19-5, p. 2).  Webb forwarded the porcupine story to plaintiff and numerous other people with the

3

statement: "Who is the prick here. Could not be me!!" (Doc. 19-5, p. 1).

In the third email, Webb forwarded an invitation or ad for "Ibiyinka Alao Gallery Talk" to plaintiff and numerous others. (Doc. 19-6). Plaintiff responded with: "How do you say his name?" (Doc. 19-6, p. 2). Webb first replied: "I be yankin' off. I don't know……" and then replied a second time: "No, I think it is   I be yankin' off alone." (Doc. 19-6, pp. 1-2).

The fourth email set consists of 53 pages most of which include photos from "People of Walmart" showing people shopping at stores wearing unusual or unattractive and sometimes revealing attire or doing unusual things in a public store. (Doc. 19-7). There is also a picture of two men falling while playing soccer in which one of their cleats caught the back of the other's shorts and reveals the man's buttocks. (Doc. 19-7, p. 45). There is a picture of a child's rear end, painted like a jack-o'-lantern, with the caption "HAPPY HALLOWEEN 2006." (Doc. 19-7, p. 22). There is a picture of a bull pulling the front cab part of a car with the statement:

> AND BE HAPPY WITH THE CHANGES THAT OBAMA HAS PLANNED FOR YOU!!
> Remember, when Ronald Reagan was president We also had Bob Hope and Johnny Cash still with us … Now we have Obama, but no Hope and no Cash!!!!!

(Doc. 19-7, p. 19). Additionally, there are pictures of a Mercedes Maybach vehicle, which has luxury items such as a bar and reclining back seats. (Doc. 19-7, pp. 17-18). There is a quote reportedly from Larry, the Cable Guy, that states the following:

4

> Even after the Super Bowl victory of the New Orleans Saints, I have noticed a large number of people implying with bad jokes that Cajuns aren't smart. I would like to state for the record that I disagree with that assessment. Anybody that would build a city 5 feet below sea level in a hurricane zone and fill it with Democrats that can't swim is a damn genius!

(Doc. 19-7, pp. 14-15).

## II. The Magistrate Judge's Report & Recommendation

The Magistrate Judge stated that she "could not determine with certainty that defendant Webb's alleged conduct does not arguably fall within the admittedly limited scope of [the tort of outrage]." (Doc. 26, p. 10, citations omitted). The Magistrate Judge went on to state that "the fact that the Alabama Supreme Court has only found facts which constitute outrage in limited situations is not equivalent to a *per se* bar to such a claim in other circumstances." (Doc. 26, p. 11). The Magistrate Judge explained that "Defendants bear the burden of persuasion and the record in this case is insufficient to allow the Court to find that plaintiff's claim of outrage against Webb was merely an artifice to avoid removal to this Court. (Doc. 26, p. 11). Accordingly, the Magistrate Judge recommended that the court grant plaintiff's motion to remand.

## III. Discussion

Defendants object to the Magistrate's recommendation asserting that if the court follows Legg v. Wyeth, 428 F.3d 1317 (11th Cir. 2005), as it should, then Webb's uncontradicted affidavit demonstrates that there is no possibility that

5

plaintiff has a viable outrage claim against Webb.  After review of the relevant case law and the facts of this case, the court agrees.

### A. Removal Standard

"In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." Friedman v. New York Life Insurance Co., 410 F.3d 1350, 1353 (11th Cir. 2005) (internal quotes omitted).  The removal statute should be construed narrowly, with all doubts resolved against removal. Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996); see also Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 107-09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941).

In a removal case alleging fraudulent joinder, the removing party has the burden of proving either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997); see also Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).  The removing party's burden is a heavy one.  "[t]he defendant must make such a showing by clear and convincing evidence." Henderson v. Washington Nat'l Ins. Co., 454 F.3d 1278 (11th Cir. 2006)(quoting Crowe, 113 F.3d at 38.  "The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties." Crowe, 113 F.3d at 1538 (citing B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549

6

(5th Cir. 1981)). In assessing a fraudulent joinder objection, the court must view the factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about applicable law in the plaintiff's favor. See Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1380 (11th Cir. 1998); Poole v. Am. Int'l Group, Inc., 414 F.Supp.2d 1111, 1116 (M.D. Ala. 2006); Jones v. Honeywell Int'l, Inc., 385 F.Supp.2d 1268, 1271 (M.D. Fla. 2005). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287, see also Pacheco de Perez, 139 F.3d at 1380 (noting that a "colorable claim" is all that's required to negate fraudulent joinder argument). "In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'" Pacheco de Perez, 139 F.3d at 1380-1381 (quoting Crowe, 113 F.3d 1536, 1538 (11th Cir.1997)). In other words, "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Coker v. Amoco Oil Co., 709 F.2d 1433 (11th Cir. 1983), superseded by statute on other grounds as stated in Wilson v. General Motors Corp., 888 F.2d 779 (11th Cir. 1989).

### B. Outrage Claims in Alabama

In this case, the complaint asserts a claim of outrage against defendant Webb. While Alabama courts recognize the tort of outrage, they have consistently

deemed it a "very limited cause of action that is available only in the most egregious circumstances."  Thomas v. BSE Indus. Contractors, Inc., 624 So.2d 1041, 1044 (Ala.1993) (noting that the Alabama Supreme Court "has held in a large majority of the outrage cases reviewed that no jury question was presented").  Under current Alabama law, a plaintiff cannot prevail on an outrage claim unless she establishes that the defendant's conduct: "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it."  Harrelson v. R.J., 882 So.2d 317, 322 (quoting Thomas, 624 So.2d at 1043).  The Alabama Supreme Court has recognized the tort of outrage in only three areas: "(1) wrongful conduct within the context of family burials;[1] (2) an insurance agent's coercing an insured into settling an insurance claim;[2] and (3) egregious sexual harassment."[3]  Callens v. Jefferson County Nursing Home, 769 So.2d 273, 281 (Ala. 2000).  Outside of these categories, shocking conduct is often deemed by Alabama courts to be insufficient to create a jury question.  Styron v. City of Foley, 2005 WL 3098926, *6 (S.D. Ala. 2005).

---

[1] See e.g., Gray Brown-Service Mortuary, Inc. v. Lloyd, 729 So.2d 280 (Ala. 1999) (cemetery's secretive disinterment and gross abuse of corpse supported judgment in favor of plaintiff).

[2] See e.g., National Security Fire & Cas. Co. v. Bowen, 447 So.2d 133, 141 (Ala. 1983) (insurance investigators' orchestration of false criminal charges against insured, threats of harm to insured's son, and holding insured at gunpoint to coerce settlement of insurance claim was conduct "so horrible, so atrocious, [and] so barbaric" as to constitute outrage).

[3] See e.g., Machen v. Childersburg Bancorporation, 761 So.2d 981 (Ala. 1999) (reversing summary judgment on finding that evidence of repeated inappropriate sexual conduct by plaintiff's supervisor at work precluded summary judgment).

### C. <u>Legg v. Wyeth</u>

Defendants assert that this court should follow <u>Legg v. Wyeth</u>, 428 F.3d 1317 (11th Cir. 2005).  In <u>Legg v. Wyeth</u>, the Court found removal was proper because the defendant pharmaceutical company produced affidavits from three of its sales representatives containing undisputed facts, which made it impossible to establish a claim against any resident defendant. <u>Id.</u>, 428 F.3d at 1319.  Specifically, the affidavits established that one representative was not an in-state resident, another representative did not sell the drug at issue, and the third representative had no way of knowing of the health risks of the drug other than what was publicized.  <u>Id.</u> at 1321.  The Court found that the plaintiff's failure, in the face of such evidence, to dispute any of the material allegations, doomed the claims against the sales representatives. See <u>Id.</u>  "When the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint." <u>Id.</u> at 1323. Although the court must resolve all questions of fact in favor of the plaintiff, "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." <u>Id.</u> at 1323.

### D. Plaintiff's Claim Against Webb

Plaintiffs assert that the claim against Webb constitutes "egregious sexual harassment."  According to plaintiffs, the alleged conduct is just the sort of conduct that has been recognized in Alabama as sufficient to support a claim of outrage.  In

particular, plaintiffs point to allegations that Webb disseminated pornographic material, disbursed a controlled substance utilized for sexual performance and engaged in "other instances of unlawful and improper denigrating sexual harassment in the workplace." (Doc. 8, pp. 3-4). Plaintiffs point out that they have alleged that the conduct was extreme and outrageous and caused plaintiff severe mental anguish and emotional distress. (Doc. 8, p. 4). Plaintiffs further allege that the conduct was intentional and so severe as to require emergency medical treatment. However, as explained above, the court is not limited in its analysis to considering only the allegations of the complaint, but may consider affidavits and deposition transcripts submitted by the parties, viewed in the light most favorable to the plaintiff.

In the instant case, defendants submitted an affidavit which describes in detail Webb's purported wrongful conduct. Plaintiffs have not submitted any affidavits, deposition testimony or even argument that further details the factual allegations of the complaint. Nothing has been presented that casts doubt on the veracity of Webb's affidavit. The factual assertions in the affidavit are generally consistent with the factual allegations of the complaint in that the affidavit admits Webb disseminated revealing or partially nude photos, disbursed a controlled substance utilized for sexual performance and distributed other emails that were arguably inappropriate for a supervisor to send to an employee. However, a review of the affidavit and its attachments clearly shows that the conduct was not so

extreme and outrageous that it would support a claim of outrage.  Since these facts are uncontested by plaintiffs, the court under Legg v. Wyeth, cannot then resolve the facts in the plaintiffs' favor based solely on the unsupported allegations and legal conclusions in the complaint.  While the factual assertions in the affidavit match up with the factual allegations in the complaint, they do not support the legal conclusions asserted in the complaint.   In other words, the facts averred by Webb do not constitute the type of egregious sexual harassment that courts in Alabama have found to satisfy a claim for outrage.[4]

When sexual harassment forms the foundation for an outrage claim, the alleged outrageous conduct must amount to more than "unwanted 'groping' and comments." See K.M. v. Ala. Dep't of Youth Services, 360 F. Supp. 2d 1253, 1260-61 (M.D. Ala. 2005) citing Turner v. Hayes, 719 So.2d 1184, 1187 (Ala. Civ. App. 1997), rev'd on other grounds, Ex parte Atmore Cmty. Hosp. v. Hayes, 719 So.2d 1190 (Ala. 1998) (woman who claimed her supervisor sexually harassed her by touching her under the armpits, near her breasts, on her leg, trying to look up her skirt, making sexual innuendo, and touching his genital area in her presence, had not stated facts so "flagrantly egregious" as to state a claim for outrage) and Saville v. Houston Cnty. Healthcare Auth., 852 F. Supp. 1512, 1541 (M.D. Ala. 1994) (conduct of defendant, who touched plaintiff on the ribs and the buttocks and made sexually inappropriate comments to her, did not rise to the level of egregiousness required

---

[4] It is questionable whether the facts even support the conclusion that the conduct was sexually

for a claim of outrage). In the instant case, there was no touching or groping, only comments and jokes, most of which were not delivered personally but by emails sent to numerous other people. The communications described by Webb were not extreme and outrageous and should not have caused emotional distress so severe that no reasonable person could be expected to endure it. The inappropriate communications clearly do not rise to the level of egregious sexual harassment. On the uncontested facts before the court here, there simply is no possibility that plaintiff can state a viable cause of action against Webb for outrage. Accordingly, the court finds that Webb was fraudulently joined and that the case was properly removed to this court.

## CONCLUSION

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and a de novo determination of those portions of the report and recommendation to which objection is made, the undersigned **DECLINES TO ADOPT** the Report and Recommendation of the Magistrate Judge. It is **ORDERED** that plaintiff's motion to remand (Doc. 8) is **DENIED**.

**DONE and ORDERED** this 13th day of June, 2013 .

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE

---

harassing, much less that it was extreme and outrageous.